Alfredo MORALES, Plaintiff–Appellant,

v.

MERIT SYSTEM PROTECTION BOARD, Edward C. Aldridge, Jr., Secretary of the Air Force, Thomas Clarence, Chairman of the EEOC, Defendants–Appellees.

No. 90–15151.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1991.

Decided May 6, 1991.

Carlos M. Alcala, Sacramento, Cal., for plaintiff-appellant.

Edmund F. Brennan, Asst. U.S. Atty., Sacramento, Cal., for defendants-appellees.

Before PREGERSON, NOONAN and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

Alfredo Morales appeals the district court's grant of summary judgment affirming the decision of the Merit System Protection Board (the Board) upholding his discharge from the Air Force. We affirm the judgment of the district court in part, reverse in part, and remand.

## BACKGROUND

Morales was a civilian employee of the United States Air Force. He had worked for the federal government for over twenty-eight years. In 1986 he was the leader of a crew of jet engine mechanics at Travis Air Force Base. The crew's primary responsibility was to conduct various maintenance, test, and overhaul procedures. Morales' role as leader was to teach the new members of the crew and to oversee the pace and quality of their work. On May 21, 1986 Morales met with a superior, Sergeant Fitzgerald, and complained that people with less education and less experience than he were being promoted before he was; that he was being denied "writing opportunities"; and that he was not being given temporary duty assignments he deserved. He concluded by saying that he was being treated unfairly and would bring an "EEO lawsuit" to redress these wrongs.

From July 1 to July 14, 1986 Morales was on leave. During this period his crew was assigned to mopping and cleaning—he declares in retaliation for his threat of a lawsuit before the Equal Employment Opportunity Commission (EEOC). When he returned from leave he requested a meeting with his superiors to complain about this treatment. Instead, he was suspended for fourteen days for misconduct.

The formal notice of suspension was to be served on August 18, 1986. Morales avoided service of the notice by scheduling a hospital appointment—the Board later found the appointment to be a means to evade service; Morales declares it was made because of a medical need. In any

event, he was served and remained suspended until September 2, 1986.

On his return to work Morales had a conversation with a new member of his crew which was later construed by the Board as an interference with an enlisted man's right to approach higher authority with a legitimate complaint; Morales had an innocuous explanation.

Two days later, on September 4, Morales engaged in a verbal and physical tussle with his assistant crew chief that Morales says was a joke and the Board found to be demeaning to the crew member.

The next day, September 5, Morales had a sharp exchange with his civilian superior, Lukens. Morales says he got mad because Lukens verbally mistreated him; the Board believed Lukens' account that Morales verbally threatened him.

On October 19, 1986, Morales was fired for the misconduct found to have occurred on August 18, September 2, September 4, and September 5, 1986.

Morales appealed his termination to the Board. After an evidentiary hearing, an administrative law judge found that each charge of misconduct was established by a preponderance of the evidence. He also found that the penalty of dismissal was not excessive given the seriousness of the offenses both individually and cumulatively; that the penalty was consistent with agency practices and in accord with the agency's table of offenses; and that Morales had failed to establish that the discharge was discriminatory or retaliatory.

Morales appealed the decision of the Board to the federal district court and brought a claim of retaliatory discharge. The district court granted the Board summary judgment on every issue.

Morales appeals.

## ANALYSIS

■ Petitions for review of Merit System Protection Board actions that do not contain discrimination claims are filed in the Court of Appeals for the Federal Circuit, but if the action is a "mixed case" involving a claim under Title VII, the case

is filed in the district court and the district court has jurisdiction to hear the entire claim. *Romain v. Shear*, 799 F.2d 1416 (9th Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). The claims involving discrimination are reviewed de novo by the district judge. The nondiscrimination claims, however, are reviewed on the administrative record under 5 U.S.C. § 7703(c):

> [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
> (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c)(1)–(3).

The difference in the judicial treatment that must be accorded the two types of claims accounts for the result we reach in this case.

*Judicial Review of the Administrative Record*

■ The crew's letters supported the four charges against Morales; so did sworn testimony from his crew members and supervisors. Substantial, credible evidence supported the Board's decision as to each charge.

■ Testimony of two of the witnesses was unavailable due to a taperecorder malfunction. Unavailability of a transcript need not, however, be harmful error. *Harp v. Dept. of Army*, 791 F.2d 161 (Fed. Cir.1986). Remand or reversal is unnecessary where the existing record is sufficient for meaningful review and the petitioner has not alleged that any particular testimony was either inconsistent or misconstrued by the administrative judge. *Id.* at 163. The record in the present case contains substantial evidence supporting the charges addressed by the unavailable testimony. The administrative law judge's findings identify the specific testimony on which he relied. Morales does not argue that the decision is an inaccurate reflection of the testimony. The district judge did not err in determining that the charges against Morales were supported by substantial evidence.

■ As to the claim that the penalty was excessive, the court must defer to the Board's judgment unless the penalty is so disproportionate to the offense as to constitute an abuse of discretion. Dismissal is harsh to this degree only when the offense committed is minor. *McClaskey v. United States Dept. of Energy*, 720 F.2d 583, 586 (9th Cir.1983). The misconduct found by the Board involved disrespect for Morales' crew and for his supervisors—disrespect that could be seen as undermining his ability to act as an effective crew leader. He could have been going through a bad patch; his long service could have been found to outweigh his recent difficulties. But neither the district court nor we could say that there was an abuse of discretion in the drastic penalty applied.

*The Title VII Claim*

■ The district court was fully aware that the standard to be applied here was different—Morales' retaliatory discharge case was "to be treated by this court on a de novo basis." The district court found that Morales had made out a prima facie case: "[a] reasonable jury or other trier of fact could find a causal link between plaintiff threatening to file an EEO complaint and his termination." But, the district court went on to say, the defendant had produced evidence that the reason for the discharge was non-retaliatory; the reason was the four instances of misconduct found by the Board. In the light of this evidence, Morales' claim of retaliation had become "implausible" and, therefore, he had to come forward "with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." The district court invoked *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 650 (1988), *citing Matsushita Elec. Indus. Co. v. Ze-*

*nith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In the light of these cases, the district court said that it was "required to, in a sense, weigh the evidence to determine whether a reasonable finder of fact could bring in a decision in favor of the non-moving party." Doing so, the district court concluded that a reasonable trier of fact could not find a genuine issue of fact that could be resolved in Morales' favor.

The district court was right in all but its view that in granting summary judgment it could "weigh the evidence" and resolve a disputed factual issue, when the resolution of that issue depended upon a determination of the credibility of the witnesses. Morales' case was that the remarkable series of incidents that occurred within three weeks of each other in the summer of 1986 had been staged by his superiors in retaliation for his threat of going to the Equal Employment Opportunity Commission. If Morales' contentions were true, the fact that the Board believed the witnesses against Morales, and could reasonably do so, did not decide who was telling the truth in the context of Morales' retaliatory discharge suit.

In that suit, there was testimony which, if believed by a jury, would be sufficient to prove Morales' case. All reasonable inferences in Morales' favor were to be considered by the court in connection with the Board's motion for summary judgment. *Matsushita Elec. v. Zenith Radio,* 475 U.S. 574 at 587–88, 106 S.Ct. 1348 at 1356–57. Although the administrative law judge believed the witnesses adverse to Morales, a jury could believe him. If a jury believed him, it could draw the inference that he was indeed singled-out and set up by his superiors after twenty-eight years of faithful service. The circumstantial evidence, plus the direct evidence if Morales was believed, was "of sufficient 'quantum and quality' to create a genuine issue of material fact." *United Steelworkers of America v. Phelphs Dodge,* 865 F.2d 1539, 1547 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 51, 107 L.Ed.2d 20 *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254,

106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The issue before the district court could not be resolved without a judgment of Morales' credibility. A jury could conclude as the Board had; or a jury could believe Morales. A triable issue remained.

AFFIRMED in part; REVERSED in part; and REMANDED.