NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM H. FERRELL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

---

2025-1533

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-22-0459-W-1.

---

Decided: December 1, 2025

---

WILLIAM H. FERRELL, Orange Park, FL, pro se.

KELLY PALAMAR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by TARA K. HOGAN, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before CHEN, BRYSON, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

William H. Ferrell petitions for review of a Merit Systems Protection Board ("Board") final order adopting the administrative judge's initial decision, which denied Mr. Ferrell's request for corrective action pursuant to the Whistleblower Protection Act ("WPA") and the Whistleblower Protection Enhancement Act ("WPEA"). *Ferrell v. Dep't of the Interior*, No. AT-1221-22-0459-W-1, 2025 MSPB LEXIS 1055 (M.S.P.B. Feb. 28, 2025) (S. App'x 5–10) ("*Final Order*"); *Ferrell v. Dep't of the Interior*, No. AT-1221-22-0459-W-1, 2024 WL 2160642 (M.S.P.B. Feb. 28, 2024) (S. App'x 12–42) ("*Initial Decision*").[1] For the reasons discussed below, we *affirm*.

## I.   BACKGROUND

Mr. Ferrell has been employed with the Department of the Interior's ("the Agency") Office of the Secretary since 2009, currently working as an Information Technology ("IT") Compliance Specialist. *Initial Decision* at 2; S. App'x 137, 752 at 12:4–24.

As part of his position, Mr. Ferrell received performance appraisal ratings in his annual Employee Performance Appraisal Plans ("EPAP"). *See, e.g.*, *Initial Decision* at 17–18. Specifically, on November 28, 2016, Mr. Ferrell received a summary rating of "Superior" on his EPAP for the 2016 fiscal year. *Initial Decision* at 17; S. App'x 825. On November 14, 2017, Mr. Ferrell received a summary rating of "Fully Successful" on his EPAP for the 2017 fiscal year. *Initial Decision* at 17; S. App'x 879. From 2018 to

---

[1]    We refer to the corrected supplemental appendix filed by the government, ECF No. 43, as "S. App'x" throughout this opinion. Citations to the Board's decisions in this opinion are to the versions included in the government's supplemental appendix. For example, *Final Order* at 1 is found at S. App'x 5, and *Initial Decision* at 1 is found at S. App'x 12.

2020, Mr. Ferrell received "Unsatisfactory" or "Unacceptable" summary ratings on his EPAPs.[2]  *Initial Decision* at 17–18; S. App'x 929–40, 978–90, 1011–20.  The Agency annually denied Mr. Ferrell's within-grade pay increase beginning in 2018 because of his performance.  *Initial Decision* at 18; S. App'x 923, 1002, 1005, 1049.  On December 3, 2021, the Agency placed Mr. Ferrell on a Notice of Opportunity to Demonstrate Acceptable Performance ("NODAP") while rescinding his rating for the 2021 fiscal year.  *Initial Decision* at 18; S. App'x 1056.

From December 2016 through October 2020, Mr. Ferrell repeatedly reported to his supervisors and officials that several IT managers disregarded their obligations under the Federal Information Security Modernization Act of 2014 and violated other laws, rules, or regulations.  *Initial Decision* at 2–4; S. App'x 137.  In March 2021, Mr. Ferrell filed a complaint with the Office of Special Counsel ("OSC"), arguing that the Agency's personnel actions were taken in retaliation for his protected whistleblower activities.  *Initial Decision* at 5; S. App'x 137.  This complaint followed two other complaints filed in July 2017 and December 2017 with OSC, as well as a complaint filed with the Agency's Office of the Inspector General in July 2020.  *Initial Decision* at 5.  On April 20, 2022, OSC terminated its inquiry into Mr. Ferrell's allegations in the 2021 complaint but notified him that he could file an individual right of action appeal with the Board.  S. App'x 137–38.

On June 23, 2022, Mr. Ferrell filed an individual right of action appeal with the Board seeking corrective action under the WPA and WPEA.  *Initial Decision* at 1; S. App'x 44–131.  In September and October 2022, the

---

[2]    The EPAP forms used from 2019 onwards update the terminology used for an "Unsatisfactory" rating to an "Unacceptable" rating.  *Compare* S. App'x 929, *with id.* at 978, 1011.

administrative judge determined that Mr. Ferrell alleged seven non-frivolous instances in which he made protected disclosures under 5 U.S.C. § 2302(b)(8), in addition to four complaints in which he alleged that he engaged in protected activities pursuant to 5 U.S.C. § 2302(b)(9). *Initial Decision* at 2–5; S. App'x 192–93, 230–34.

On February 28, 2024, the administrative judge denied Mr. Ferrell's request for corrective action under the WPA and WPEA. *Initial Decision* at 1. The administrative judge determined that Mr. Ferrell did not show by a preponderance of the evidence that his seven non-frivolous disclosures were protected disclosures under 5 U.S.C. § 2302(b)(8). *Id.* at 6–14. In addition, the administrative judge determined that the Agency established by clear and convincing evidence that it would have taken the same personnel action in the absence of Mr. Ferrell's protected activity. *Id.* at 14–24. Accordingly, the administrative judge denied Mr. Ferrell's request for corrective action. *Id.* at 24. On February 28, 2025, the administrative judge's initial decision became the Board's final decision. *Final Order* at 1; *see also* 5 C.F.R. § 1200.3(b).

Mr. Ferrell petitions for review in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

"We must affirm the decision of the Board unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Cobert v. Miller*, 800 F.3d 1340, 1347–48 (Fed. Cir. 2015) (citing 5 U.S.C. § 7703(c)). We review the Board's conclusions of law de novo and the Board's factual findings for substantial evidence. *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1322 (Fed. Cir. 2021). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

(quoting *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015)).  "We review the [Board]'s evidentiary rulings for abuse of discretion."  *Sharpe v. Dep't of Just.*, 916 F.3d 1376, 1379 (Fed. Cir. 2019).

Mr. Ferrell makes five principal arguments: (1) the Board "routinely ignored or failed to include" his "Undisputed Material Facts" and failed to recognize that these facts were not disputed by the Agency, Petitioner's Br. 3–5; (2) the Board impermissibly denied him the opportunity to call certain witnesses, *id.* at 5–6; (3) the Board improperly excluded or ignored certain evidence, *id.* at 6–10, 16–17; (4) the Board erred in concluding that the Agency would have taken the same personnel actions in the absence of the protected activities because it "improperly weighed" the *Carr* factors, *id.* at 10–13; *see Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); and (5) the Board failed to recognize the alleged due process violations he suffered during his duty station change, Petitioner's Br. at 14–15.  We address each argument in turn.

A.

First, we disagree with Mr. Ferrell's suggestion that the Board "routinely ignored or failed to include" his "Undisputed Material Facts" and failed to recognize that these facts were not in dispute.  Petitioner's Br. 3–5.  "The failure to discuss particular contentions in a case . . . does not mean that the tribunal did not consider them in reaching its decision."  *Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007); *see, e.g., Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise.").  In this case, the administrative judge informed Mr. Ferrell that she would not consider Mr. Ferrell's "Undisputed Material Facts" as undisputed because the Agency disagreed that they were undisputed but that he could address this evidence at the hearing.  S. App'x 1087.  The Board never expressly stated

that it would not review Mr. Ferrell's "Undisputed Material Facts," to the extent that they were raised as evidence at the hearing, and the record does not otherwise provide a basis from which we can conclude that the Board failed to review this evidence. Accordingly, we disagree that the Board erred with respect to its treatment of Mr. Ferrell's allegedly "Undisputed Material Facts."

## B.

Second, we disagree with Mr. Ferrell's argument that the Board improperly denied him the opportunity to call critical witnesses during his hearing. Petitioner's Br. 5–6. The administrative judge excluded Mr. Ferrell's requested witnesses as a sanction for failing to follow the Board's orders but allowed Mr. Ferrell to testify on his own behalf. S. App'x 1087; *see* 5 C.F.R. § 1201.43(a)(2) ("When a party fails to comply with an order, the judge may . . . [p]rohibit the party failing to comply with the order from introducing evidence concerning the information sought, or from otherwise relying upon testimony related to that information[.]"); *see, e.g., Harp v. Dep't of Army*, 791 F.2d 161, 163 (Fed. Cir. 1986) (holding that the presiding official properly excluded evidence due to respondent's failure to comply with an order). The administrative judge also provided adequate warning to Mr. Ferrell about this potential sanction. *See* 5 C.F.R. § 1201.43 ("Before imposing a sanction, the judge shall provide appropriate prior warning, allow a response to the actual or proposed sanction when feasible, and document the reasons for any resulting sanction in the record."). Specifically, the administrative judge granted the Agency's motion for sanctions only after first warning Mr. Ferrell, on two separate occasions, that he could be subject to sanctions if he continued to communicate with Agency officials regarding his ongoing litigation. S. App'x 195 (September 15, 2022 order warning about sanctions); S. App'x 322–23 (December 9, 2022 order warning about sanctions); S. App'x 406 (June 16, 2023 order granting the Agency's motion for sanctions). Accordingly,

the Board did not abuse its discretion when it excluded Mr. Ferrell's witnesses due to his repeated failures to comply with the administrative judge's orders.

## C.

Third, we disagree with Mr. Ferrell's argument that the Board improperly limited, or did not consider, the evidence he offered. Petitioner's Br. 6–10, 16–17. As discussed above, we presume the Board reviewed this evidence given that it did not explicitly express otherwise. *See Medtronic*, 789 F.2d at 906. Furthermore, "[i]f an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1379 (Fed. Cir. 1988). Mr. Ferrell has not shown that the Board abused its discretion by improperly limiting the evidence he offered because he has not explained how the Board's alleged error affected the outcome of his case. *See, e.g.*, Petitioner's Br. 16–17 (raising only conclusory arguments that the Board "grievously imperiled [his] ability to support and prove his case" because its decision to ignore his evidence led to the "erod[ing of] his credibility" and "crippl[ed] his chances" to get a higher EPAP rating). Therefore, we conclude that the Board did not commit reversible error with respect to its consideration of the evidence offered by Mr. Ferrell.

## D.

Fourth, we disagree with Mr. Ferrell's argument that the Board erred in its weighing of the factors set out in *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Petitioner's Br. 10–13. In the context of whistleblower retaliation, an agency may rebut the claim by proving "by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing." *Carr*, 185 F.3d at 1323. Analysis of whether the agency

has satisfied its burden of proof involves consideration of three factors:  (1) "the strength of the agency's evidence in support of its personnel action;" (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision;" and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Id.*

As to the first *Carr* factor, substantial evidence supports the Board's determinations that "the [A]gency had strong evidence to support the EPAP ratings from 2017 to 2021; the denials of the within-grade increases starting in 2018; and the placement of the NODAP in 2021" and "had strong reasons to relocate the appellant in November 2019." *Initial Decision* at 21–22.  After reviewing the EPAPs submitted by the Agency, Mr. Ferrell's supervisor's testimony, and Mr. Ferrell's own testimony, the Board determined that the Agency was not "requiring [Mr. Ferrell] to perform illegal activity," and was not, "as such, vindicating him in refusing to perform the duties assigned." *Id.* at 17–21.  Rather, the Board determined that Mr. Ferrell was "basically refusing to follow his supervisor's instructions." *Id.* at 20.  Based on the record, we conclude that substantial evidence—including that Mr. Ferrell repeatedly failed to perform his assigned duties—supports the Board's finding that this factor favors the Agency's position. *See, e.g.*, S. App'x 840–55 (supervisor testifying about Mr. Ferrell's EPAP for the 2017 and 2018 fiscal years); S. App'x 966–977 (supervisor testifying about Mr. Ferrell's EPAP for the 2019 and 2020 fiscal years and that Mr. Ferrell was reassigned because he "could/would not self-support his home-based work environment" and that he "has not been performing his duties"); S. App'x 1049–55 (supervisor explaining continued denial of Mr. Ferrell's within-grade increase since September 2, 2018 because he was "not performing at an acceptable level of competence"); S. App'x 1064–77 (supervisor finding it necessary to place

Mr. Ferrell on NODAP because of his unsatisfactory performance).

Substantial evidence also supports the Board's determination with respect to the second *Carr* factor. After Mr. Ferrell's supervisors testified, the Board determined that, "while some institutional bias may have existed due to their knowledge of [Mr. Ferrell's] protected activity, . . . no other motive to retaliate existed." *Initial Decision* at 22. The Board's assessment of this factor was based on the credibility of the testimony provided by Mr. Ferrell's supervisors. *See Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) ("Under the substantial evidence standard of review, we do not reweigh evidence on appeal." (cleaned up and citation omitted)); *King v. Dep't of Health & Hum. Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998) ("[A]n evaluation of witness credibility is within the discretion of the Board and . . . in general, such evaluations are 'virtually unreviewable' on appeal." (citation omitted)). Accordingly, we will not disturb the Board's finding on this factor.

As to the third *Carr* factor, the Board did not err in finding this factor "neutral" because it found persuasive "the [A]gency's assertion that there simply was no similarly situated employee." *Initial Decision* at 23. Mr. Ferrell argues that the Agency was responsible for providing "similarly situated employees." Petitioner's Br. 11. Although the absence of evidence regarding similarly situated employees cannot favor the government, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1374 (Fed. Cir. 2012); *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022) ("Because the agency need not prove every factor weighs in its favor, the absence of evidence related to *Carr* factor three is not fatal to the agency."). Consequently, we "consider the record as a whole and balance the *Carr* factors to determine whether substantial evidence supports the Board's finding

that the agency clearly and convincingly proved it would have removed the employee independent of his protected disclosures." *Rickel*, 31 F.4th at 1366 (cleaned up) (quoting *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1019 (Fed. Cir. 2019)). We find no error in the Board's weighing of the *Carr* factors. Therefore, we conclude that substantial evidence supports the Board's determination that the Agency would have taken the same personnel actions against Mr. Ferrell even absent his protected activities.

E.

Fifth, we disagree with Mr. Ferrell's argument that the Board failed to recognize that he suffered an alleged due process violation when the Agency changed his duty station and when it charged him with absent without leave ("AWOL") status. Petitioner's Br. 14–15. As an initial matter, Mr. Ferrell points to no support for the assertion that due process requires that a supervisor must provide an employee adequate prior notice and an opportunity to respond prior to charging that employee with AWOL status or changing his duty station. Moreover, the record reflects that Mr. Ferrell had sufficient notice such that he had time in which he could have responded prior to when the actions went into effect. In 2019, Mr. Ferrell locked himself out of the government's authentication system for a period of around five months, and he was unable to perform the duties required by his position. S. App'x 971–73; *see Initial Decision* at 22. Consequently, he was charged with AWOL status in November 2019, and the Agency changed Mr. Ferrell's permanent duty station effective November 24, 2019. S. App'x 742, 973. He was subsequently charged with additional AWOL status in December 2019. S. App'x 973. The record reflects that Mr. Ferrell's supervisor warned Mr. Ferrell that he would be charged with AWOL status if he did not report to the office to address his access issues. *Id.* Mr. Ferrell does not identify anything in his briefing on appeal that indicates he was denied due process. *See, e.g.*, Petitioner's Br. 14–15. Accordingly,

FERRELL v. INTERIOR                                        11

we disagree with Mr. Ferrell's contention that the Board violated his due process rights.

### III. CONCLUSION

We have considered Mr. Ferrell's remaining arguments, including, but not limited to, the arguments raised in his Memorandum in Lieu of Oral Argument, ECF No. 42, and find them unpersuasive. For the above reasons, we *affirm*.

### **AFFIRMED**

### COSTS

No costs.